Filed 9/25/20  510pacificave v. Lucido CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| 510PACIFICAVE, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> MATTHEW J. LUCIDO, <br><br> Defendant and Respondent | B295174 <br><br> (Los Angeles County Super. Ct. No. BC638688) |

APPEAL from an order of the Superior Court of Los Angeles County, Robert S. Draper, Judge.  Affirmed.

Miller & Miller, Robert Miller, for Plaintiff and Appellant.

Kibler Fowler & Cave, John D. Fowler, Kevin J. Cammiso, for Defendant and Respondent.

—————————————

Plaintiff and appellant 510pacificave, a duly registered fictitious name of the Lindeva Living Trust dated August 20, 2003, of which Kim W. Lu is the trustee (Landlord), appeals from a post-judgment order in favor of Matthew Lucido (Tenant) which vacated a default judgment and an order imposing terminating sanctions for failure to comply with discovery orders.  On appeal, Landlord contends:  (1) Tenant's former attorney did not attest to mistake, inadvertence, surprise, or neglect in his affidavit of fault as required for mandatory relief under Code of Civil Procedure section 473, subdivision (b);[1] (2) the order imposing terminating sanctions could not be vacated under section 473, subdivision (b), because Tenant filed his motion to vacate more than six months after entry of the order; (3) Tenant did not meet the requirements for equitable relief; and (4) the trial court abused its discretion by arbitrarily and capriciously reducing the amount requested for attorney fees incurred in connection with the discovery matters.  We conclude the record is inadequate to review the trial court's exercise of its inherent equitable authority to set aside the default judgment and the order granting terminating sanctions.  Even were we to find the record adequate for review, no abuse of the trial court's discretion has been shown.  Therefore, we affirm.

---

[1] All further statutory references are to the Code of Civil Procedure, unless otherwise stated.

2

# FACTS AND PROCEDURAL BACKGROUND

## Complaint and Discovery

On March 18, 2016, Tenant entered into an agreement to lease an apartment unit in Venice from Landlord for one year. On October 27, 2016, Landlord filed an action for breach of contract against Tenant, alleging that Tenant breached a lease provision against short-term rentals by repeatedly subletting the unit. Under the agreement, Tenant owed $200 for each violation, for a total exceeding $25,000.

Tenant filed an answer on December 9, 2016, which was not verified. He also filed a cross-complaint for failure to accommodate his disability and failure to engage in the interactive process that was not verified. He alleged that he moved into the apartment on April 1, 2016, with his certified service dog. When Landlord learned of the animal, she had her attorney inform Tenant that he was in violation of the lease provisions prohibiting animals, and Tenant was forced to vacate the apartment.

Landlord filed an answer to the cross-complaint. Landlord also served form interrogatories and requests for the production of documents related to the complaint and the cross-complaint.

In January 2017, Tenant responded to the form interrogatories and requests for the production of documents related to the complaint and the cross-complaint. Tenant's

responses to the requests for production of documents were mostly identical boilerplate objections, and Tenant did not produce any documents. Tenant's attorney Charles L. Menzies (Menzies) signed the pleadings as Tenant's attorney, but signed the proof of service as attorney for American Solar Direct, Inc. No party in the case was named American Solar Direct, Inc. Tenant signed verifications stating that he was an authorized representative of American Solar Direct, Inc., and American Solar Direct Inc.'s responses were true and correct. Tenant's responses to form interrogatories related to the cross-complaint had no verification attached.

On January 24, 2017, Landlord's attorney Robert Miller sent a meet and confer letter to Menzies concerning the request for production of documents related to the cross-complaint and responding to each of Tenant's objections. Landlord also argued that Tenant was required to verify his discovery responses in his individual capacity and not in a representative capacity for a non-party entity.

That same day, Landlord sent a meet and confer letter concerning the form interrogatories related to the cross-complaint. Landlord explained which interrogatory responses had been omitted or were confusing, and argued that verification was required. Landlord sent another meet and confer letter extensively responding to each objection to the requests for production of documents related to the complaint, as well as a meet and confer letter responding to

4

each of the insufficient form interrogatories with respect to the complaint.

On February 1, 2017, Landlord served special interrogatories on Tenant in connection with the cross-complaint.  In early February, Miller mailed a scheduling notice to Menzies at his law office in Fullerton, California.

On February 17, 2017, Landlord filed motions to compel Tenant to produce documents and to compel further responses to form interrogatories in connection with the cross-complaint.  Landlord listed three interrogatories that Tenant had failed to answer, seven interrogatories that had confusing answers because Tenant ignored subparts, and one non-responsive answer.  Landlord also filed motions to compel Tenant to produce documents and to compel further responses to form interrogatories in connection with the complaint.  Landlord identified specific interrogatories that were insufficient and sought verified further responses.

A case management conference was held on March 1, 2017.  Menzies appeared for Tenant by telephone.  The trial court ordered Miller to meet and confer with Menzies, including discussion of the motions to compel discovery.  Trial was set for October 31, 2017.

On March 3, 2017, the scheduling notice was returned to Miller marked, "Return to Sender, Attempted – Not Known, Unable to Forward."  During a meet and confer telephone call on March 6, 2017, Menzies provided Miller with a new address in Newport Beach.  Miller sent an email to confirm their conversation, but did not receive a reply.

On March 8, 2017, Landlord's special interrogatories were returned to Miller in the mail, as were all of the motions to compel that had been served on February 17, 2017, with a sticker stating "Return to Sender, Attempted – Not Known, Unable to Forward." Miller immediately mailed the items to Menzies' new Newport Beach address.

On March 17, 2017, Landlord filed a motion to compel Tenant to respond to the special interrogatories related to the cross-complaint. No opposition was filed to the motions to compel further responses to discovery. A hearing was held on the motions to compel further discovery responses on May 4, 2017. No appearance was made for Tenant. The trial court granted the motions to compel in their entirety. The court granted sanctions of $240 against Tenant and Menzies. Landlord provided notice of the ruling to Menzies at the Newport Beach address.

On May 30, 2017, Landlord filed a motion for terminating, issue, evidence, and monetary discovery sanctions. A hearing was held on June 20, 2017, on the motion to compel responses to special interrogatories. No opposition to the motion was filed, and there was no appearance at the hearing for Tenant. The trial court granted the motion to compel responses to special interrogatories. The trial court ordered counsel for all parties to appear at a status conference on August 22, 2017. The trial date was continued to November 28, 2017. Landlord provided written notice of the ruling and further orders of the trial court.

On July 10, 2017, Landlord amended its motion for terminating sanctions to encompass Tenant's failure to respond to the order compelling responses to special interrogatories. A status conference was held on August 22, 2017, at which no appearance was made for Tenant.

On August 30, 2017, Menzies filed by facsimile a notice of his change of address to North Carolina, providing a street and email address.

A hearing was held on October 18, 2017, on the motion for terminating sanctions. No court reporter was present, and no agreed or settled statement is part of the record on appeal. No opposition had been filed. Menzies appeared for Tenant by telephone. The trial court granted the motion for terminating sanctions, struck Tenant's answer to the complaint, and entered a default against Tenant on the complaint. The trial court dismissed the cross-complaint with prejudice. The court found that the imposition of monetary sanctions, in light of the granting of terminating sanctions, was not in the interests of justice. Landlord gave notice of the court's ruling.

Landlord submitted the documents necessary to support a default judgment on the complaint and filed a declaration with the calculation of damages under the contract. Landlord also filed the trustee's declaration. Landlord submitted a declaration based on Airbnb records showing that Tenant was the "host" for approximately 60 separate short-term rental sites in Venice, Santa Monica, and Downtown Los Angeles from March 18 to October 27,

2016, and hosted 102 "guests" at the apartment rented from Landlord. Landlord also submitted the lease agreement specifically stating that "Airbnb or similar short-term rentals or subletting is 'violation of [tenancy]'."

On December 15, 2017, the trial court entered judgment in favor of Landlord in the amount of $23,556.51, including pre-judgment interest and costs. Landlord provided notice of entry of judgment to Tenant through attorney Menzies at the North Carolina address.

**Motion to Vacate and Supporting Evidence**

On June 5, 2018, Tenant's new attorney John Fowler filed a motion to vacate the judgment under section 473, subdivision (b) based on the inexcusable gross neglect of Tenant's former attorney Menzies. Tenant argued the judgment should be vacated as a matter of law under section 473, subdivision (b), because the motion was filed within six months of entry of judgment and accompanied by an attorney affidavit of fault. The default judgment against Tenant was the direct result of Menzies' mistake, inadvertence, surprise, or neglect. In addition, the judgment should be vacated under the court's inherent equitable power based on extrinsic mistake, because Tenant had a meritorious defense and meritorious cross-complaint, a satisfactory excuse for not presenting a defense in the original action, and acted diligently in seeking to set aside the default once discovered. Tenant's failure to defend

8

himself was solely the result of Menzie's mistake, inadvertence, surprise, or neglect.

Tenant submitted Menzies' declaration in support of the motion to vacate the judgment. Menzies listed the discovery requests and responses served between the parties through February 1, 2017. He additionally declared: "10. I did not respond to [Landlord's] meet and confer letter, at which point [Landlord] filed four separate motions to compel production of documents and/or further responses . . . . [¶] 11. I did not communicate this to [Tenant] and, when I did not serve responses to [Landlord's] first set of special interrogatories to [Tenant] as cross-complainant, [Landlord] filed a fifth motion to compel responses thereto on March 17, 2017. [¶] . . . [¶] 13. On May 4, 2017, [Landlord's] four motions to compel came on for hearing. Neither myself nor anyone else from my office appeared on behalf of [Tenant.] . . . [¶] 14. I did not communicate [this] turn of events to [Tenant] and, when I subsequently did not comply with the Court's May 4, 2017 order to provide further responses and remit sanctions, [Landlord] moved for terminating sanctions on May 30, 2017. . . . [¶] 15. . . . [Landlord's motion to compel responses to special interrogatories] came on for hearing on June 20, 2017 and, again, neither myself nor anyone else from my office appeared on behalf of [Tenant]. I did not inform [Tenant] of this hearing, or any of the other hearings/issues described herein. . . . 16. Ultimately, I failed to comply with the Court's June 20, 2017 order and did not serve responses to [Landlord's] special interrogatories.

Therefore, [Landlord] filed an amended motion for terminating sanctions to address this failure on July 10, 2017.

"17.  On August 30, 2017, I filed a Notice of [C]hange of Address or Other Contact Information to reflect my move to North Carolina.  Despite relocating out of state, I remained [Tenant's] counsel of record.  [¶]  . . .  [¶]  19.  On October 18, 2017, [Landlord's] motion for terminating sanctions came on for hearing and I appeared telephonically on behalf of [Tenant].  The Court adopted its tentative ruling and granted [Landlord's] motion for terminating sanctions.  Accordingly, [Tenant's] answer was stricken and default entered against him as to the complaint. . . .  The Court then dismissed [Tenant's] cross-complaint with prejudice and set an order to show cause regarding the entry of default judgment against [Tenant] for December 15, 2017.  [¶]  20.  Neither party appeared at the December 15, 2017 hearing on the Court's order to show cause regarding entry of default judgment and, consequently, the Court entered default judgment against [Tenant].  The failure to appear at the hearings and respond to the pleadings/motions as described herein were not the fault of my former client [Tenant], but rather was the fault of myself alone.  I did not inform [Tenant] of the existence of any of the hearings or issues described herein."

Tenant also submitted his own declaration in support of the motion to vacate.  He declared that Menzies never informed him, and he was not otherwise made aware, of the

motions to compel production of documents or further responses. Menzies did not inform Tenant about Landlord's special interrogatories or Landlord's motion to compel responses to the special interrogatories, and Tenant was not otherwise aware of them. Menzies did not tell Tenant about the order compelling responses and sanctions of $240, the hearing on the motion to compel responses to special interrogatories, or the order compelling responses to special interrogatories and sanctions of $60. Menzies never told Tenant that he was relocating out of state, and accordingly, he remained Tenant's counsel of record. Tenant was not aware of the motion for terminating sanctions or Menzies' telephonic appearance for him at the hearing. He was not aware that his answer to the complaint was stricken and the cross-complaint dismissed. Tenant was not aware of the hearing in December 2017, on the order to show cause regarding entry of default judgment or the resulting default judgment against him. Between January and March 2018, Tenant repeatedly attempted to contact Menzies by email, telephone, and text message. Menzies did not respond to the communications. Tenant was not aware that a default judgment had been entered against him until the Los Angeles County Sheriff issued a notice of levy under Landlord's writ of execution on April 24, 2018. Immediately upon discovery the judgment, Tenant retained new counsel on May 8, 2018.

On June 28, 2018, Tenant substituted attorney Fowler as his attorney of record. Landlord filed evidentiary

objections to Tenant's declaration and Menzies' declaration. On December 3, 2018, Landlord filed an opposition to the motion to vacate on grounds including that Menzies' declaration did not meet the requirements for mandatory relief, because he did not admit to any mistake, inadvertence, surprise, or neglect. In addition, Tenant's motion was not accompanied by a copy of the pleading proposed to be filed. The motion was filed more than six months after the October order dismissing the cross-complaint and striking the answer to the complaint. Further, deliberate strategic decisions were not entitled to relief.

Landlord submitted the trustee's declaration and Tenant's rental application. Landlord provided copies of email exchanged with Tenant. Responding to a neighbor's allegations, Miller asked Tenant to confirm that he was not renting out his apartment on Airbnb, because it would be a violation of his rental agreement. Tenant denied that he was renting his apartment on Airbnb. He had been traveling for business and letting a friend stay in his apartment.

Landlord provided Miller's declaration. On November 25, 2016, Menzies requested a one-week extension to respond to the complaint. He explained that he received a flat fee from Tenant to work on various projects. Miller noted that Tenant had not described his contact or communication in 2017 with Menzies when the events in the case occurred. At the hearing on October 18, 2017, Menzies

12

had told the trial court by telephone that Tenant had not allowed him to respond to the outstanding discovery. Judge Feuer replied that regardless, there were consequences. Menzies requested the cross-complaint be dismissed without prejudice, to allow Tenant to file it again. Judge Feuer replied that it would not be fair to Landlord. Menzies did not raise any other argument during the hearing.

Miller declared that he was admitted to practice in California in 1967, had 50 years of experience in civil, real estate, and probate practice. His reasonable hourly rate was $400 per hour, and he had incurred 37.5 hours specifically on written and deposition discovery, pursuing the required discovery motion processes and court appearances referred to in the moving papers, and for which $15,000 was a reasonable sum for attorney fees incurred on behalf of Landlord's cause. In addition, the previously ordered costs of $240 remained outstanding.

Landlord submitted a copy of Menzies' email stating, "I also trust that like me, you're probably not handling this case to make your year – I work off a flat fee on Mr. Lucido's other projects so I am already a sunk cost. So it may end up being the two of us that don't see a real benefit in protracting the conflict."

Tenant filed a reply. Tenant argued that he was not required to submit discovery responses with the motion to vacate, as long as he served verified discovery responses at or before the hearing on the motion. In addition, the discovery provisions did not preclude relief under section

473, subdivision (b). No inference could be drawn from the declarations that Tenant had voluntarily defaulted. He also argued that Landlord's attorney fees for the default should be awarded against Menzies, not Tenant.

The trial court issued a tentative ruling and a hearing was held on the motion to vacate on December 14, 2018. The hearing was not reported, and no settled statement has been made part of the record on appeal. The minute order reflects that after hearing argument, the trial court ordered the tentative ruling would become the final ruling, which the trial court signed and filed that day. The court found Tenant was entitled to mandatory relief under section 473 from the default judgment against him. There was no evidentiary basis to find the default was obtained as a strategic effort at delay. Tenant declared that he was not aware or informed about the events. Menzies had also stated that he did not inform Tenant of the discovery issues. Menzies was not required to use the specific words "mistake" or "neglect" in his declaration for the mandatory relief provisions of section 473 to apply.

The court further found relief was available under the equitable provisions of section 473, subdivision (b), as to Tenant's cross-complaint. Tenant was required to show facts from which it could be ascertained that Tenant had a sufficiently meritorious claim to entitle him to trial. Tenant's cross-complaint alleging a claim for discrimination based on the failure to accommodate a certified service dog was a claim that had been previously upheld by courts.

14

Landlord had not challenged the sufficiency of the allegations.

The court granted the motion to vacate the judgment as long as Tenant served verified discovery responses at or before the hearing on the motion. The court concluded that Landlord's explanation for the attorney fees incurred was overbroad, because it included written and deposition discovery, pursuing the required meet and confer and discovery motion processes, and all of the court appearances referred to in the moving papers. It was not apparent which of the $15,000 was reasonably attributable to Menzies' misconduct or the costs of opposing the motion for terminating sanctions. The court awarded sanctions to Landlord against Menzies in the amount of $3,000.

That same day, the trial court entered an order prepared by Tenant as well. This order expressly directs that "the judgment entered on December 15, 2017 against Lucido is vacated, along with the order dismissing counterclaims by Lucido." In addition, any liens against Tenant's property were ordered withdrawn and any monies collected by way of lien, encumbrance, or levy returned within five days. Landlord filed a timely notice of appeal from the post-judgment order granting the motion to vacate.

## DISCUSSION

### Inadequate Record

The record on appeal in this case does not include a reporter's transcript of the hearing on the motion to vacate or a suitable substitute, such as a settled statement under California Rules of Court, rule 8.137. We conclude the record is insufficient to demonstrate reversible error under California law.

When an order is reviewed for an abuse of discretion, a record of the oral proceedings is typically necessary to facilitate adequate review. "In numerous situations, appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute was provided. [Citations.] [¶] The reason for this follows from the cardinal rule of appellate review that a judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented."' (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127.)" (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186–187.)

"A reporter's transcript may not be necessary if the appeal involves legal issues requiring de novo review. [Citation.] In many cases involving the substantial evidence or abuse of discretion standard of review, however, a reporter's transcript or an agreed or settled statement of the proceedings will be indispensable." (*Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476, 483.) If the record is inadequate to allow meaningful review, ""the appellant defaults and the decision of the trial court should be affirmed."' [Citation.] '. . . [Appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [appellant].' [Citation.]" (*Foust v. San Jose Construction Co., Inc.*, *supra*, 198 Cal.App.4th at p. 187.)

Without a record of the trial court proceedings that took place on December 14, 2018, regarding the motion to vacate, we cannot review the arguments, concessions, or information presented to the trial court. We do not know what statements were made by the parties or the trial court about setting aside the October 18, 2017 order issuing terminating sanctions, nor the default judgment. The record is insufficient to show any additional evidence presented or offers of proof that were made to support the trial court's findings that Tenant had meritorious claims, was abandoned by his attorney, and was diligent in seeking to vacate the default judgment and the October order. There is no basis to review the trial court's exercise of its discretion to vacate the rulings. There is also no basis to examine the trial court's

17

calculation of sanctions of $3,000, equivalent to seven and a half hours of attorney time, in connection with vacating the default judgment and the October order. We presume the post-judgment order is correct unless the record affirmatively demonstrates otherwise, and therefore, no showing of an abuse of discretion has been made on appeal.

## Trial Court's Inherent Equitable Power

Even if we were to find the record adequate for review, we would conclude that the trial court did not abuse its discretion by vacating the default judgment and the order imposing terminating sanctions.

### A. Applicable Law and Standard of Review

In order to qualify for mandatory or discretionary relief under section 473, subdivision (b), a party must file an application within six months of the entry of default or default judgment.[2] In this case, Tenant filed his motion to

---

[2] Section 473, subdivision (b), provides in pertinent part: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time,

vacate within six months of the default judgment entered in December, but more than six months after the order issuing terminating sanctions in October, including the entry of default and the dismissal of the cross-complaint. Although the December judgment was subject to the provisions of section 473, subdivision (b), the October order was not.

In addition to the statutory methods for setting aside a default, however, "[a] trial court has inherent power to vacate a default judgment on equitable grounds. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 (*Rappleyea*); *Aldrich v. San Fernando Valley Lumber Co.* (1985) 170 Cal.App.3d 725,

---

in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken. . . . No affidavit or declaration of merits shall be required of the moving party. Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect. The court shall, whenever relief is granted based on an attorney's affidavit of fault, direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties. However, this section shall not lengthen the time within which an action shall be brought to trial pursuant to Section 583.310."

736 (*Aldrich*).) 'One ground for equitable relief is extrinsic mistake—a term broadly applied when circumstances extrinsic to the litigation have unfairly cost a party a hearing on the merits.' (*Rappleyea*, at p. 981; see *Aldrich*, at p. 738.) '[E]xtrinsic mistake exists when the ground of relief is not so much the fraud or other misconduct of one of the parties as it is the excusable neglect of the defaulting party to appear and present his claim or defense. If that neglect results in an unjust judgment, without a fair adversary hearing, the basis for equitable relief on the ground of extrinsic mistake is present.' (*Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 47 [(*Manson*)]; see *In re Marriage of Park* (1980) 27 Cal.3d 337, 342.)" (*Mechling v. Asbestos Defendants* (2018) 29 Cal.App.5th 1241, 1245–1246 (*Mechling*).)

"To qualify for equitable relief based on extrinsic mistake, the defendant must demonstrate: (1) 'a meritorious case'; (2) 'a satisfactory excuse for not presenting a defense to the original action'; and (3) 'diligence in seeking to set aside the default once the fraud [or mistake] had been discovered.' (*In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1071; see *Rappleyea, supra*, 8 Cal.4th at p. 982.)" (*Mechling, supra*, 29 Cal.App.5th at p. 1246, fn. omitted.) The six-month period for statutory relief does not limit equitable relief on grounds of extrinsic fraud or mistake. (*Manson, supra*, 176 Cal.App.4th at p. 47.)

We review the order vacating the default judgment and the order granting terminating sanctions for an abuse of

20

discretion.  (*Mechling*, *supra*, 29 Cal.App.5th at p. 1246.) Under this standard, "we may reverse only if we conclude the trial court's decision is "'so irrational or arbitrary that no reasonable person could agree with it.'" [Citation.]" (*Id.* at p. 1249.)  "That a different decision could have been reached is not sufficient because we cannot substitute our discretion for that of the trial court.  The trial court's ruling must be beyond the bounds of reason for us to reverse it." (*Id.* at p. 1249; accord, *Minick v. City of Petaluma* (2016) 3 Cal.App.5th 15, 24 (*Minick*).)  "The law 'favor[s] a hearing on the merits whenever possible, and . . . appellate courts are much more disposed to affirm an order which compels a trial on the merits than to allow a default judgment to stand.' (*Aldrich*, *supra*, 170 Cal.App.3d at p. 737.)" (*Mechling*, *supra*, 29 Cal.App.5th at p. 1246.)

### B.  Scope of Post-Judgment Order

We must first address whether the post-judgment order vacated the entire October order imposing terminating sanctions or simply the portion of the order related to the cross-complaint.  The October order entered Tenant's default with respect to the complaint and dismissed the cross-complaint.  We conclude the post-judgment order vacated the October order in its entirety, rather than simply a portion of the order.

"The same rules of interpretation apply in ascertaining the meaning of a judgment as in ascertaining the meaning of

21

any other writing." (*Cottom v. Bennett* (1963) 214 Cal.App.2d 709, 716.) We review the entire judgment and construe it as a whole, rather than separately considering individual clauses or provisions. (*In re Gideon* (1958) 157 Cal.App.2d 133, 136.) "'No particular part or clause in the judgment is to be seized upon and given the power to destroy the remainder if such effect can be avoided.' [Citation.]" (*Ibid*.) "'If a judgment is ambiguous, we may examine the entire record to determine its scope and effect, including the pleadings.' (*Rancho Pauma Mutual Water Co. v. Yuima Municipal Water Dist.* (2015) 239 Cal.App.4th 109, 115.)" (*Hall v. Superior Court* (2016) 3 Cal.App.5th 792, 805.) "'The court may also "refer to the circumstances surrounding the making of the order or judgment, [and] to the condition of the cause in which it was entered."'' [Citations.]" (*In re Marriage of Richardson* (2002) 102 Cal.App.4th 941, 948–949.)

The trial court's post-judgment order vacated the December judgment, "along with the order dismissing counterclaims by Lucido." The plain language of the ruling vacated the entire order made in October, not a portion of the order. Landlord filed one unified motion for terminating sanctions, the October order granted the motion by awarding terminating sanctions, and we conclude the trial court vacated the entire order granting terminating sanctions.

To the extent the post-judgment order is ambiguous, however, we may look to the pleadings and the circumstances surrounding the making of the order for

22

guidance. Although Tenant did not expressly specify the October 2017 default order in his motion to vacate the default judgment, Tenant implicitly requested it. Tenant argued that both his defense to the complaint and the claims made in his cross-complaint were meritorious, and he requested an opportunity for the case to be heard on the merits. In order to have a meaningful opportunity to be heard on the merits, the trial court had to vacate both the default judgment and the earlier order entering the default and dismissing the cross-complaint. The October 2017 default order, entered more than six months before Tenant filed his motion to vacate, could be vacated only through an exercise of the court's inherent equitable power. The trial court's tentative ruling, which became the final ruling, referred to Tenant's pleading as a "motion to vacate default and default judgment." The post-judgment order was conditioned on Tenant serving verified discovery responses at or before the hearing. Discovery responses related to the complaint were not relevant unless the court intended to vacate the entry of default. The pleadings and the court's ruling support our conclusion that the trial court intended to provide relief from both the entry of default and the default judgment. To the extent the arguments and the court's statements during the hearing would have further clarified the judgment, Landlord has not met the burden on appeal to provide an adequate record for review and we presume the statements at the hearing further support vacating the entire October order.

## C. Merit

Landlord does not dispute that the allegations of Tenant's pleadings constituted a defense to the complaint and a claim for relief in his cross-complaint. Landlord contends, however, that Tenant was required to submit evidence establishing his claims were meritorious in order to receive equitable relief. This is incorrect; factual allegations are sufficient to establish a meritorious claim for the purpose of relief.

"Before a party may invoke the aid of equity for relief from a judgment he must not only allege matters wherein the judgment is unjust or was fraudulently obtained, but he must also allege that he has a meritorious defense to the action or proceeding wherein the judgment, decree or order was obtained. In other words, facts must be alleged, not merely as ultimate facts, but such facts must be alleged as would warrant the court in determining that if the facts so alleged be proven a different result would ensue." (*Huron College v. Yetter* (1947) 78 Cal.App.2d 145, 150; see also *Hart v. Gudger* (1957) 153 Cal.App.2d 217, 220.)

"In this context, only a minimal showing is necessary. (*Stiles v. Wallis* (1983) 147 Cal.App.3d 1143, 1148.) The moving party does not have to guarantee success, or 'demonstrate with certainty that a different result would obtain . . . . Rather, [it] must show facts indicating a sufficiently meritorious claim to entitle [it] to a fair adversary hearing.' (*In re Marriage of Park*, *supra*, 27

24

Cal.3d at p. 346.)" (*Mechling*, *supra*, 29 Cal.App.5th at p. 1246.)

Attaching a verification to a proposed answer is sufficient to demonstrate merit. (*Stiles v. Wallis*, *supra*, 147 Cal.App.3d at p. 1148.) An unverified pleading combined with a lawyer's general declaration that the defendants had "a very good (and certainly a justiciable) defense" has also been found to establish merit. (*Rappleyea*, *supra*, 8 Cal.4th at p. 983.) A proposed pleading or a declaration with "evidence" of a meritorious defense is not required, however. (*Mechling*, *supra*, 29 Cal.App.5th at p. 1246.) In *Mechling*, the appellate court found an intervenor sufficiently asserted a meritorious defense without submission of a proposed pleading or a declaration averring that the intervenor had a meritorious defense, but simply because the intervenor retained counsel and argued in the motion to vacate that a different result might be reached if the intervenor were allowed to present a defense. (*Id*. at pp. 1247–1248.)

Landlord does not dispute that the allegations of the answer and the cross-complaint were sufficient, if proven true, to reach a different result. This is sufficient to support the trial court's finding of merit.

### D. Satisfactory Excuse

The trial court's finding that Tenant presented a satisfactory excuse for failing to respond to discovery orders

25

is supported by substantial evidence of positive misconduct by Tenant's former attorney.

"In this context the terms 'fraud' and 'mistake' have been given a broad meaning by the courts, and tend to encompass almost any set of extrinsic circumstances which deprive a party of a fair adversary hearing. (See *In re Marriage of Park*[, *supra*,] 27 Cal.3d [at p.] 342.) The term 'extrinsic' refers to matters outside of the issues framed by the pleadings, or the issues adjudicated. (See *Olivera v. Grace* [(1942)] 19 Cal.2d [570,] 575.)" (*Aldrich, supra*, 170 Cal.App.3d at p. 738.)

"Generally, in motions under section 473, or under the inherent equity power of the court, the plaintiff must plead that the neglect or omission of his attorney was excusable, because inexcusable neglect is ordinarily imputed to the client, and his redress is an action for malpractice. However, in a case where the client is relatively free from negligence, and the attorney's neglect is of an extreme degree amounting to positive misconduct, the attorney's conduct is said to obliterate the existence of the attorney-client relationship. [Citations.] The client in such a case has representation only in a nominal and technical sense." (*Aldrich, supra*, 170 Cal.App.3d at pp. 738–739.)

"Positive misconduct is found where there is a total failure on the part of counsel to represent his client." (*Aldrich, supra*, 170 Cal.App.3d at p. 739.) "Where a client is unknowingly deprived of effective representation by counsel the client will not be charged with responsibility for

26

misconduct if the client acts with due diligence in moving for relief after discovering the attorney's neglect and if the other side will not be prejudiced by the delay." (*Ibid*.)

"The client's own negligence in following up and pursuing his case is also scrutinized, even in cases of positive misconduct on the part of the attorney." (*Aldrich*, *supra*, 170 Cal.App.3d at p. 739.) But clients are not required to make suspicious inquiries or incessantly check on their attorneys. (*Id.* at pp. 739–740.) In *Aldrich*, the appellate court found a client who waited three years before seeking out his attorney was not negligent. (*Ibid*.)

In this case, Menzies did not respond to correspondence from Miller, did not prepare or serve responses to discovery, relocated without forwarding his mail or informing his client, failed to appear for multiple hearings, did not comply with court orders, and failed to file opposition to the motion for terminating sanctions. He did not inform Tenant that motions to compel discovery had been filed, that he failed to appear for hearings, or that he had not complied with court orders, which had resulted in terminating sanctions against Tenant. In Menzies's declaration, he does not assign any fault to Tenant for the failure to respond to discovery. Tenant also declared that he did not know about the discovery motions, the hearings, the sanctions orders, or Menzies's relocation out of state. This evidence of Menzies' breach of his professional duties was sufficient to support the trial court's finding that Menzies effectively abandoned

his client and Tenant was not negligent for waiting a year to seek out his attorney.

### E. Diligence after Discovery

It is undisputed that Tenant acted diligently to set aside the default judgment and the order issuing terminating sanctions after they had been discovered. "[W]here the aggrieved party makes a strong showing of diligence in seeking relief after discovery of the facts, and the other party is unable to show prejudice from the delay, the original negligence in allowing the default to be taken will be excused on a weak showing." (*Aldrich*, *supra*, 170 Cal.App.3d at p. 740.) No prejudice to Landlord has been shown from the delay.

We conclude the trial court did not abuse its discretion by granting Tenant's motion for equitable relief. Our review is governed by the deferential abuse of discretion standard, and we cannot substitute our discretion for that of the trial court. In this case, we cannot say that the trial court's decision was so irrational or arbitrary that no reasonable person would agree with it.

## Attorney Fees

Landlord contends the trial court abused its discretion by awarding less than the full amount of attorney fees that Landlord requested as compensation. As noted above, the

28

record is inadequate to review the trial court's calculation of attorney fees. Even on the record before us, Landlord has not shown that the amount awarded for attorney fees was beyond the bounds of reason. When a trial court grants discretionary relief from default, the court may order the defendant to pay costs, including attorney fees, incurred by the plaintiff in obtaining the default judgment. (*Rogalski v. Nabers Cadillac* (1992) 11 Cal.App.4th 816, 823; *Vanderkous v. Conley* (2010) 188 Cal.App.4th 111, 118–119.) Landlord's attorney declared that he worked 37.5 hours on this case, including preparing written and deposition discovery, pursuing the required meet and confer process, and making court appearances, for a reasonable total of $15,000 in attorney fees. The trial court did not abuse its discretion by reducing the amount awarded to reflect the amount of attorney fees incurred to obtain the default judgment and the order granting terminating sanctions. It was not an abuse of discretion to exclude hours spent in preparation of discovery and in pursuit of the discovery process. The amount of $3,000 to compensate Landlord for the cost of obtaining the default and the default judgment has not been shown to be an abuse of discretion.

## DISPOSITION

The post-judgment order is affirmed.  Respondent Matthew Lucido is awarded his costs on appeal.


MOOR, J.

We concur:



RUBIN, P. J.



KIM, J.